ANNIE OHMEYER, Respondent, v. SUPREME FOREST WOODMEN CIRCLE, of Omaha, Neb., Appellant.

**St. Louis Court of Appeals, December 17, 1901.**

1. **Evidence**: WRITINGS: PUBLIC DOCUMENTS: EXEMPLIFIED COPIES OF PUBLIC DOCUMENTS WHEN EVIDENCE. Writings, such as a public functionary is required to enter in books in the course of public duties, are public documents and they, or exemplified copies of them, are admissible in evidence.

2. ———: ———: CERTIFICATE OF DEATH DEPOSITED IN THE OFFICE OF HEALTH COMMISSIONER OF CITIES OF THE FIRST CLASS, IN MISSOURI, IS ADMISSIBLE IN EVIDENCE. In the case at bar, the certificate offered in evidence is called a copy of the burial certificate but is in form and substance a certificate of death conforming in every particular with the charter, section 10, article 12 of the city of St. Louis, and was deposited where the law required a death certificate to be filed, to-wit, in the office of the health commissioner of said city. It was properly authenticated and by express provision of the charter was competent evidence, and should have been admitted as presumptive evidence of the fact that Kate Geraghty died of consumption.

3. ———: ———: ———: BREACH OF WARRANTY. And as this certificate furnished evidence of a breach of one of the warranties upon which the policy of insurance was issued, it was material and its exclusion was prejudicial to the appellant.

Appeal from St. Louis City Circuit Court.—*Hon. John O'Neill Ryan,* Judge.

REVERSED AND REMANDED.

### STATEMENT OF THE CASE.

The material allegations of the petition are that on the fifth day of July, 1899, the defendant executed and delivered to one, Mary Geraghty, its certain beneficiary certificate by which certificate in consideration of the payment of the assessments therein provided to be made by the said Mary Geraghty, and other covenants and agreements set forth in said certificate, the defendant insured the life of said Mary Geraghty for the sum of two thousand dollars, in case the proceeds of the assessment upon all the members of the order in good standing during the month following the approval of the death claim under the said certificate would yield such an amount, or in case the proceeds of one assessment upon such members should be less than the two thousand dollars, then the beneficiary named in the certificate was thereby entitled to receive the proceeds of one assessment from the members of said order in full settlement of all demands under said certificate and to pay the sum of one hundred dollars for the erection of a monument at the grave of the said Mary Geraghty; that one H. F. Ohmeyer was named as the beneficiary in said certificate. Section 48 of the constitution and by-laws of the defendant corporation provides that, "Should a member desire to change his or her beneficiary he or she can do so upon the payment of a fee of one dollar and the surrender of the certificate to the clerk of the grove with the desired change noted thereon. The certificate and fee shall be forwarded to the supreme clerk who shall issue and return a new certificate as requested." That on the eighteenth day of December, 1899, Mary Geraghty was a member of Cypress

grove, No. 51, located in St. Louis, Missouri; that on the seventeenth day of November, 1899, said Mary Geraghty was a member in good standing of the defendant corporation and a member of said Cypress grove and had duly kept and performed all the terms and conditions required by said certificate of insurance, and by-laws and rules of the defendant company, and desiring to change the beneficiary in said certificate she did duly in writing on the back of said certificate designate the plaintiff Annie Ohmeyer, to be the beneficiary therein instead of H. F. Ohmeyer and signed her name to the statement on the back of said certificate and surrendered the same to the clerk of Cypress grove and paid to said clerk the fee of one dollar as required; that said clerk transmitted said certificate so surrendered and the one dollar so paid to the clerk of the defendant but that the supreme clerk of the defendant and the defendant have failed and refused, although requested by said Mary Geraghty, to issue a new certificate and have kept said old certificate; that plaintiff is the sister of Mary Geraghty. That on the eighteenth day of December, 1899, Mary Geraghty died; that at the time of her death she had made payments of all assessments which became due under the terms of said certificate under the constitution, by-laws, rules and regulations of the defendant with the exception of assessments which became due in the months of October, November and December, 1899, and these she tendered to said defendant for each of said months, and in each of said months, but that defendant wrongfully refused to accept same; that at all times since the death of Mary Geraghty the proceeds of one assessment upon the members in good standing of defendant has amounted to more than two thousand dollars. That upon the death of Mary Geraghty, plaintiff at once notified defendant and in due time furnished defendant written proofs of her death and made demand for the payment to her of two thousand dollars to which she was entitled as beneficiary. Plaintiff prays judgment requiring

the defendant to deliver to the plaintiff the beneficiary certificate, or that the court treat the case as if said certificate had been issued, for judgment for the sum of two thousand dollars with interest and for one hundred dollars for the erection of a monument at the grave of Mary Geraghty.

The answer, after a general denial admitted that defendant is a fraternal beneficiary association incorporated under the laws of the State of Nebraska; admits the delivery of its policy of life insurance to Mary Geraghty for the sum of two thousand dollars; admits that one assessment upon all its members at the time of the death of Mary Geraghty would yield more than the sum of two thousand dollars and an amount sufficient to furnish one hundred dollars for a monument; denies that plaintiff has any interest in said policy; alleges that the certificate of insurance was subject to certain conditions printed on the back thereof and certain others named in the constitution and by-laws of the order and, that among the conditions upon which the policy was issued was a reliance upon the truth of certain representations and warrants made in writing by the said Mary Geraghty over her signature in respect to the health of members of her family; that among these were the following, to-wit: she declared that she never had had asthma, bronchitis, consumption, spitting or raising of blood; that none of her near relatives had been afflicted with consumption, raising of blood, or with pulmonary, scrofulous, cancerous or any hereditary disease; that in truth and fact Kate Geraghty, full sister to said Mary Geraghty, had previously thereto died with consumption and that the said Mary Geraghty at the time of making the application and prior thereto was afflicted with bronchitis and consumption, of which disease she died. The defendant relied upon the truth of the representations and warrants made by said Mary Geraghty in issuing the said certificate of insurance and that said representations and warrants were made a part of the contract of insurance; that by reason of the falsity

of the representations and warrants hereinbefore set forth, said policy had no effect, and that no liability was incurred by the defendant when it issued said certificate; that prior to the death of said Mary Geraghty, defendant tendered back to her and to the beneficiary named in the policy all dues, assessments, transfer fees or other charges paid to defendant on account of said policy and now tenders in court ten and forty one-hundredths dollars in full of all such dues, assessments and transfer fees paid by the said Mary Geraghty to defendant. The reply was a general denial.

It was agreed by plaintiff's and defendant's counsel that the case be treated as an equity case and that the chancellor submit to a jury for its finding the following questions of fact to aid the chancellor in rendering a decree in the case. "First. Was the insured, Mary Geraghty, in good health on the twenty-fifth day of August, 1899, at the time the policy in controversy was delivered to her? If not, from what was she suffering? Second. Did or did not Kate Geraghty, the sister of Mary Geraghty, the insured, die of malarial fever? If not, of what did Kate Geraghty die? Third. Did or did not Mary Geraghty, the insured, suffer from an attack of bronchitis, asthma or consumption, prior to making application for the policy of insurance upon which this suit is based, and if so, which?" The answer to the first question returned by the jury, was, "Yes, she was in good health;" to the second, "Yes, she died of malarial fever;" to the third, "No, she did not." This verdict was returned on January 18, 1901, and on the same day the cause was argued and submitted to the chancellor. On February 15, defendant filed a motion to reopen the cause and filed four affidavits in support thereof; on February 20, the motion to reopen the cause was overruled; on March 5, 1901, the court entered a decree in favor of the plaintiff and adjudged that the plaintiff recover the sum of two thousand dollars with interest thereon from May 11, 1900,

at the rate of six per cent per annum, making a total of two thousand and ninety-eight dollars, and ordered that execution issue therefor. Defendant filed its motion for a new trial in due time which was by the court overruled, whereupon defendant appealed. Respondent offered in evidence the certificate of insurance issued to Mary Geraghty, July 25, 1899, together with the indorsement thereon in words and figures as follows, to-wit:

"I, Mary Geraghty, to whom this certificate was issued, do hereby cancel and surrender this certificate in order that a new one shall be issued, and that the benefit shall be of the amount of two thousand dollars, and shall be made payable to Mrs. Annie Ohmeyer, who bears relationship to myself of sister.

"MARY GERAGHTY.    (Seal)

"Signed at St. Louis, State of Missouri, this seventeenth day of November, 1899.

"Attest:    F. A. Dow, Clerk Grove No. 51, Woodmen Circle.

"Witness of signature, H. F. Ohmeyer."

Respondent then introduced and read in evidence, the original certificate of insurance and all the papers in connection therewith including examining physican's report and evidence that Mary Geraghty had paid all the assessments made against her by the defendant except those of October, November and December and that she had tendered payment of the assessments made for those months and that defendant had refused to accept the tenders. Evidence that the certificate, after it had been indorsed by Mary Geraghty requesting that a new one be made out to plaintiff as beneficiary, was forwarded to the supreme secretary of the order and that he refused to make out a new certificate for the reason that the supreme physician had ordered him not to do so and not to

receive any money from Mary Geraghty. Plaintiff also proved that she was the sister of Mary Geraghty, and that due notice of the death of Mary Geraghty was furnished appellant.

Elias Holovtschiner, the head physician of the order, testified that in the month of November, 1899, he visited Mary Geraghty at St. Mary's Infirmary in St. Louis and made an examination of her with the view of ascertaining her physical condition; that he found her suffering with consumption in a very advanced stage, found consumption of the larnyx and cavities in her lungs, and from the condition he found her in he was satisfied she had been suffering of consumption for at least one year; that in his opinion as an expert it would require a year for the disease to develop into the condition in which he found the patient; that Mary Geraghty told him that she had been afflicted with bronchitis about a year prior to November, 1899; that acting under instructions from the supreme guardian of the order he instructed the local circle not to accept any more money for dues or for assessments from her, and that he tendered back to H. F. Ohmeyer, the beneficiary in the original certificate, the amount of dues and assessments which had been theretofore paid by Miss Geraghty but that Ohmeyer refused to accept the money; that in his examination of Miss Geraghty he used no instruments but listened to her lungs and breathing and percussion of her chest and took a sample of her sputum and examined the latter under a microscope; that a patient with what is commonly called "galloping consumption" would die in six or eight weeks, and that there are cases on record where they died in a shorter time.

Frederick A. Dow, the clerk of Cypress grove, testified that he tendered back to Mary Geraghty the amount of fees and assessments she had paid and that she refused to accept the same; that Mr. Ohmeyer gave him a dollar to have the beneficiary in Mary Geraghty's certificate changed and he told him at the time that he would accept it only under protest

and if the supreme forest would not accept it and issue a new certificate he should take the dollar back, and that Ohmeyer agreed to do this; that twice afterwards he tendered him back the dollar but he refused to accept it and that he yet had the dollar in his possession; that H. F. Ohmeyer was a member of grove No. 51 and attended its meetings and that it was his duty to report the fact that Mary Geraghty was in the hospital but that he failed to do so and the grove learned it from other sources. Evidence was introduced to the effect that Mary Geraghty visited the meetings of the grove but once after she became a member.

Lillian B. Scott, testified that she knew Mary Geraghty personally and that ever since the early part of December, 1898, Mary had a severe cough and that she saw her February, 1899, several times in the yard coughing and spitting, and that on December 25, Mary said to her in company of others that she would not live to see another Christmas, and that early in February she received a box of Slocum's consumption cure by express; that she was sick in bed in January, 1899; that in May of the same year she left home and went to the country for her health but returned in two weeks.

Mrs. Claude Nichols testified, that in the early part of 1899, she lived next door to respondent and Ohmeyer with whom Mary Geraghty resided; that Mary had a terrible attack of bronchitis in the early part of that year and could not speak above a whisper for six or eight weeks and that she had a cough and coughed constantly, and continued to do so up to the last time that she saw her, and was very weak.

There was evidence tending to show that H. F. Ohmeyer was the active representative of Mary Geraghty in the procurement of the original certificate of membership and of the offer to change the beneficiary therein.

In respect to the death of Kate Geraghty, the appellant offered in evidence the following copy of the burial certificate:

"COPY OF BURIAL CERTIFICATE, ST. LOUIS.

"Name of deceased, Kate Geraghty.

"Age, 19 years, — months, — days.

"Female. White. Single.

"Occupation ————.

"Place of birth, Ireland.

"Place of death, No. — St. Johns Hospital, St. Louis, Missouri.

"Date of death, June 2, 1888.

"Cause of death, phthisis pulmonalis.

"I certify that I attended the person above named in her last illness, who died of the disease stated, on the date above named. (Signed)

JUSTIN STEER, M.D., Address, St. Louis, Missouri.

"Place of burial, Calvary Cemetery.

"HARRIGAN & SHEEHAM, Undertakers.

"Office Health Department,

"St. Louis, Mo., Dec. 20, 1899.

"I, the undersigned, clerk of health commissioner and board of health, hereby certify the foregoing to be a true copy from the death records in this office.

"Fee $1.00.

"MAX KAUFMAN,

"Clerk of Health Commissioner and Board of Health.

"Countersigned:

"ISAAC H. STURGEON, Comptroller.

"HY. BESCH, Register."

To which respondent objected as being incompetent and no evidence of the facts contained therein, which objection was by the court sustained and appellant saved an exception.

*Richard A. Jones* for appellant.

(1)    Defendant, being a fraternal beneficiary associa-
tion is not subject to the general insurance laws of the State,
and the warranties contained in the certificate and applica-
tion, made part of it, will be enforced as such.    And if any
of the statements made in such policy or application are not
literally true, whether material or not, the certificate is void.
Sec. 1408, R. S. 1899; Aloe v. Life Association, 147 Mo.
561.    (2)    Insured warranted that none of her near rela-
tives had consumption or any pulmonary or hereditary di-
seases.    The board of health record of the city of St. Louis
shows that Kate Geraghty died of consumption.    This person
was shown to be the sister of insured.    The court erred, such
foundation having been laid, in refusing to allow a copy of
this record, duly certified in evidence.    R. S. 1899, secs. 9
and 10, pp. 2525-2526.    (3)    The statement contained in
the written application for insurance, made a warranty, and
upon which the certificate in suit was issued, is that none of
the near relatives of insured died of consumption or any pul-
monary complaint.    The Kate Geraghty described in this
board of health record was shown by the testimony of the
undertaker to be the sister of insured.    A proper foundation
having thus been laid for its introduction, and facts contained
in it being made as they are by statute presumptive evidence,
the court plainly erred in not admitting it.    The measure of
diligence to be required in this class of cases is to be deter-
mined by the circumstances of each, and no hard-and-fast
rule is laid down on such matter.    In a case like the present,
where the evidence offered on motion is of such character as
to certainly change the judgment of the court, any delin-
quency in this regard must be flagrant, indeed, in order to
justify a tribunal in refusing, upon this ground alone, to give
relief, thus so heavily penalizing the applicant, and, as fur-
ther shown by such evidence, rewarding the perpetrators of a
positive fraud.    Keet v. Mason, 45 N. E. Rep. 81; Ellis v.
Ginsburg, 163 Mass. 143; Vollkomer v. Nassau, 48 N. Y.

S. 372; Benta v. Harris, 58 N. Y. S. 398; 14 Ency. of Plead-
ing and Prac., 421; Standard Inv. Co. v. Hoyt, 63 S. W.
1093.

*E. W. Banister* for respondent.

(1)   The testimony of Dr. Steer was incompetent and
should have been excluded.   Section 4659, Revised Statutes
1899, provides:   "The following persons shall be incompe-
tent to testify:  .  .  .   Fifth.   A physician or surgeon
concerning any information which he may have acquired from
any patient while attending him in a professional character
and which information was necessary to enable him to pre-
scribe for such patient as a physician or do any act for him
as a surgeon."   In Gartside v. Ins. Co., this section was held
to apply not only to matters communicated by the patient,
but to any information derived by the physician while treat-
ing the patient.   In Groll v. Tower, 85 Mo. loc. cit. 225, the
court approvingly quotes from the case of Cohen v. Conti-
nental Insurance Co., 11 N. Y. Sup. Ct. 296, as follows:
"The true position is that the statute makes a peremptory
rule, but as the rule is made for the benefit of the patient, he
may waive the right given to him.   Until there is such a
waiver, the law is as plain as words can be that the physician
shall not be allowed to testify."   This is not a case where
the testimony may be excluded upon objection, but a case
where the testimony is not to be admitted unless there is a
waiver by the patient or his representative.   In the early
cases in this State, the Supreme Court held that the disability
of the statute could not be waived.   Harriman v. Stowe, 57
Mo. 93.   (2)   "The statute which says a physician or surgeon
shall be incompetent to testify concerning any information
which he may have acquired from any patient while attend-
ing him in a professional character, etc. (Sec. 4017, R. S.
1879), does not create an absolute disqualification.   The

secrecy enjoined upon the physician and surgeon is. for the protection of the patient and may be waived. The patient does waive the privilege by calling the physician as a witness to testify as to information thus acquired. Groll v. Tower, 85 Mo. 249." And in Corbett v. Ry. Co., 26 Mo. App. 621, the court says (p. 626): "The present rule in this State on that subject is clearly stated in Groll v. Tower: 'Where the evidence of the attending physician is offered by the patient or his representative, it is competent and admissible. Where it is offered by the opposite party, the physician can not testify against the objection of the patient or his representatives.'" (3) Whether or not additional testimony shall be received after a cause has been submitted, is a matter that rests within the discretion of the trial court. Unless that discretion is abused this court will not interfere. Goodrich v. Railroad, 152 Mo. 222; Stephens v. Gallagher, 42 Mo. App. 246; State v. Smith, 80 Mo. 520; Mayor of Liberty v. Burns, 114 Mo. 429; Van Studdiford v. Hazlitt, 56 Mo. 324; Jones v. Furnishing Goods Co., 77 Mo. App. 474.

BLAND, P. J.—Writings such as a public functionary is required to enter in books in the course of public duties are public documents and they, or exemplified copies of them, are admissible in evidence.

By section 9, article 12, of the city charter, a health department is provided for to be managed by a board of health and by an officer denominated the health commissioner. Section 9, of the same article, requires the health commissioner to keep a record of his acts and orders and to file all petitions and documents belonging to his office. The same section provides that copies of such documents, orders, etc., when authenticated by the clerk of the commissioner, shall be presumptive evidence in courts of justice of the facts therein contained. Section 10, of the same article requires all physicians, who may practice in the city, when a patient

dies under his care to make out a certificate stating the name, age, sex, place of birth, place and date of death, together with the name of the disease of which said person died, one of which shall, without delay, be deposited in the office of the health commissioner and the other with the undertaker of the funeral to be by him delivered to the person in charge of the graveyard where the body is to be buried.

In Connor v. Metropolitan Insurance Company, 78 Mo. App. 131, we held that the records kept by the manager of the St. Louis city hospital, as required by an ordinance, were not competent evidence. A very different question is presented by the case at bar. The paper offered was one required by public law to be recorded and filed in the office of a public functionary, whose office is created by public law, to-wit, the charter of the city: and the same law makes an exemplified copy of the paper presumptive evidence of its contents in all courts of justice. In Reynolds v. Prudential Life Insurance Company, 88 Mo. App. 679, the defendant offered as evidence tending to show that the insured died of consumption, the records of the health department of Kansas City, including a copy of the certificate of death. The trial court excluded this evidence. On appeal the Kansas City Court of Appeals, held this error, and that the certificate of death was competent evidence under the provisions of sections 5450, 5458 and 5459, Revised Statutes 1899, which are literal copies of sections 1, 9 and 10, article 12, of the St. Louis city charter, and are charter provisions in all cities of the first class.

The certificate offered in evidence is called a copy of the burial certificate but is in both form and substance a certificate of death conforming in every particular with the charter (section 10, supra), and was deposited where the law required a death certificate to be filed, to-wit, in the office of the health commissioner. It was properly authenticated and by express provision of the charter was competent evidence

and should have been admitted as presumptive evidence of the fact that Kate Geraghty died of consumption. As this certificate furnished evidence of a breach of one of the warranties upon which the policy of insurance was issued, it was material and its exclusion was prejudicial to the appellant.

.The competency of Dr. Steer to testify as a witness is not raised by the record as there is no cross-appeal, and the discussion of this question by the counsel in their briefs was unnecessary.

For the error excluding the death certificate, the judgment is reversed and the cause remanded. Judges *Barclay* and *Goode* concur.